**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **MICHAEL IAN GIBSON, #15078510** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:22cv351** |
| | § | |
| **SHERIFF JIM SKINNER, ET AL.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants Sheriff Jim Skinner ("Sheriff Skinner"), Assistant Chief Langin, Assistant Chief Jaquez, Captain Mccullough, Captain Mendoza, Captain Christensen, Captain Barnett, Captain Crossland, Lieutenant Gann, Lieutenant Frizzell, Lieutenant Beber, Lieutenant Green, Lieutenant Rodriguez, Lieutenant Leahy, and Commander Sepulvado's (together, "Defendants") Motion to Dismiss ("Motion to Dismiss") (Dkt. #48). Plaintiff Michael Ian Gibson ("Plaintiff") filed a response (Dkt. #62) to the Motion to Dismiss, and Defendants filed a reply (Dkt. #63). For the reasons that follow, the Court recommends the Motion to Dismiss (Dkt. #48) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

On April 20, 2022,[1] Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this lawsuit against Defendants. (Dkt. #1). At all times relevant to his claims, Plaintiff was a pretrial detainee at the Collin County Detention Facility. Plaintiff alleges he was forced to eat meals inside his cell as a result of the Collin County Detention Facility's COVID-19 response. (Dkt. #1). He complains

---

[1] Plaintiff's Complaint is dated April 20, 2022 (Dkt. #1, p. 7); thus, the Court deems the Complaint filed on this date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a *pro se* prisoner's complaint is deemed to be filed on the date that the prisoner submits the pleading to prison authorities to be mailed); *Williams v. Peykos*, No. 6:20-CV-566, 2023 WL 3216782, at *3 (E.D. Tex. Mar. 24, 2023) (finding the plaintiff's complaint is deemed filed on the date the plaintiff signed and dated his complaint), *report and recommendation adopted*, No. 6:20-CV-566-JDK-KNM, 2023 WL 3211844 (E.D. Tex. May 1, 2023).

this condition forced him to eat food less than three feet from the toilet, which amounted to "inhumane-unsanitary conditions." (Dkt. #1, pp. 4, 6, 8-9). Specifically, Plaintiff alleges Defendants Sheriff Skinner, Assistant Chief Langin, and Assistant Chief Jaquez "implemented the order under color of administration and alleged CDC [Center for Disease Control] protocol" while Defendants Commander Sepulvado, Captain Mccullough, Captain Mendoza, Captain Christensen, Captain Barnett, Captain Crossland, Lieutenant Gann, Lieutenant Frizzell, Lieutenant Beber, Lieutenant Green, Lieutenant Rodriguez, and Lieutenant Leahy "continue[d] to enforce the inhumane unsanitary order issued under the color of the Sheriff's Office and alleged CDC protocol." (Dkt. #1, pp. 4, 6, 8-9). Plaintiff states he has endured these inhumane and unsanitary conditions since he arrived at the Collin County Detention Facility on April 14, 2021. (Dkt. #1, pp. 6, 8-9). Plaintiff requests injunctive relief "to correct the issue for [himself] and future detainees," as well as compensatory and punitive damages. (Dkt. #1, p. 6).

On September 27, 2022, Defendants moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. #48). Defendants argue Plaintiff's claims should be dismissed because: Plaintiff failed to exhaust his administrative remedies and has not shown a physical injury as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e); Defendants are entitled to qualified immunity in their individual capacities; Plaintiff cannot establish any official capacity claim; and Plaintiff fails to allege any viable claim that would allow recovery of punitive damages against Defendants. (Dkt. #48, pp. 4-8, 13). In addition, Sheriff Skinner urges dismissal because no plausible allegations exist as to his direct or personal involvement, and he cannot be held vicariously liable for his subordinates' actions. (Dkt. #48, pp. 9-13).

On December 23, 2022, Plaintiff filed his response to the Motion to Dismiss, wherein he argues the COVID-19 protocol requiring detainees to eat in their cells "was continued [at the Collin County Detention Facility] well after every restaurant and public place were open to the public." (Dkt. #62, p. 2). Plaintiff then lists the reasons he takes "issue" with the protocol. (Dkt. #62, p. 2). Specifically, he complains double-occupancy cells were not "adequately designed" for two people in which to eat their meals and caused sanitation issues. (Dkt. #62, p. 2). He also complains inmates were fed on reusable trays instead of disposable trays, which "promote[d] the introduction of the virus due to reusing the trays instead of disposing of them." (Dkt. #62, p. 2). Additionally, Plaintiff alleges inmates in certain pods were allowed to eat in the dayroom while the other inmates had to eat in their cells. (Dkt. #62, p. 2). Plaintiff also argues forcing detainees to eat in their cells violates the Geneva Convention, the "International Covenant on Civil and Political Rights circa 1976," and Section 281.2 of the Texas Commission on Jail Standards. (Dkt. #62, pp. 3-4). Plaintiff urges he has exhausted his administrative remedies and attaches grievance forms and responses to the grievances.[2] (Dkt. #62, pp. 4-5; Dkt. #62-2, pp. 5-6; Dkt. #62-5; Dkt. #62-6). Plaintiff further argues Defendants' knowledge of their "atrocities" should overcome their entitlement to qualified immunity. (Dkt. #62, p. 5). Plaintiff asserts Sheriff Skinner was personally involved in the events giving rise to Plaintiff's claims because he was listed on Plaintiff's grievances and is not entitled to qualified immunity because he was the "keeper of the jail." (Dkt. #62, p. 5). Finally, Plaintiff clarifies he is requesting an injunction "requiring the Defendants to cease and desist any and all actions of feeding the detainees, in their care, within the confines of their cells" and seeking

---

[2] Only one of the grievances was submitted before Plaintiff filed this lawsuit on April 20, 2022. (Dkt. #62-2, pp. 5-6). That grievance is dated April 17, 2022, and states detainees were forced to eat meals in their cells from "4-14-21 to Date." (Dkt. #62-2, p. 5). The remaining grievances concern additional dates occurring after the commencement of this lawsuit when detainees were again forced to eat their meals in their cells. (Dkt. #62-5). Thus, the conduct underlying Plaintiff's grievances was ongoing.

punitive damages from Sheriff Skinner in his "private capacity" in the amount of $640,500 "for continuing to feed the Plaintiff in his cell for 1,281 meals since his incarceration began on April 14, 2021." (Dkt. #62, p. 1).

On January 8, 2023, Defendants filed a reply to Plaitiff's response, wherein they reurge their arguments advanced in their Motion to Dismiss. (Dkt. #63).

On January 17, 2023, Plaintiff filed a Notice of Change of Address, informing the Court he had been transferred to the Fannin County Jail, 2389 Silo Road, Bonham, Texas 75418. (Dkt. #64).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, any document attached to the motion to dismiss that is central to the claim and referenced by the complaint, and any facts subject to judicial notice. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

The Court is also mindful that it "must construe the pleadings of *pro se* litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-01761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)).

### III. ANALYSIS

#### A.  No Longer Confined at Collin County Detention Facility—Injunctive Relief

Because Plaintiff is no longer a detainee at the Collin County Detention Facility, his requests for injunctive relief are moot. The Fifth Circuit and district courts in Texas have repeatedly held transfer out of the facility complained of moots any claim for declaratory or injunctive relief related to jail-specific remedies. *See, e.g., Kennemer v. Parker Cnty.*, No. 4:20-cv-056-P, 2021 WL 1192249, at *10 (N.D. Tex. Mar. 30, 2021) (collecting cases) ("As [the plaintiff] is no longer housed in either of these county jails, however, his claims for injunctive or declaratory relief are moot."), *aff'd*, No. 21-10467, 2022 WL 2610239 (5th Cir. July 8, 2022); *Lee v. Valdez*, No. CIV.A.3:07-cv-1298-D, 2009 WL 1406244, at *14 (N.D. Tex. May 20, 2009)

(collecting cases) ("Courts therefore hold, for example, that when a prisoner challenges prison conditions after he is released from confinement, his claim for injunctive and/or declaratory relief is moot, and the prisoner can no longer challenge the prison conditions unless he can point to a concrete and continuing injury.").

## B.  **The PLRA**

Defendants contend the PLRA[3] bars Plaintiff's claims for two reasons: (1) Plaintiff failed to exhaust his administrative remedies; and (2) Plaintiff failed to allege a physical injury. (Dkt. #48, pp. 5-6).

### 1.  **Exhaustion**

Defendants contend Plaintiff has failed to satisfy the PLRA's requirement that prisoners exhaust administrative remedies prior to filing suit. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Exhaustion is an affirmative defense, and the defendants have the burden of proving that the plaintiff failed to exhaust available administrative remedies." *Prescott v. Plybol*, 855 F. App'x 952, 953 (5th Cir. 2021) (per curiam). "Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." *Id.* (quoting *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015)).

Plaintiff affirmatively indicated in his Complaint that he satisfied the PLRA's exhaustion requirement prior to filing suit and attached grievance forms and replies to his response to the Motion to Dismiss. (*See* Dkt. #1, p. 4; Dkt. #62-2; Dkt. #62-5; Dkt. #62-6). Although Defendants

---

[3] For PLRA purposes, pretrial detainees are considered prisoners. *See* 42 U.S.C. § 1997e(h); *Pomier v. Leonard*, 532 F. App'x 553 (5th Cir. 2013).

assert Plaintiff failed to file grievance appeals (Dkt. #63, p. 2), Defendants have submitted no evidence to this Court regarding Collin County Detention Facility's grievance procedures.[4] *See Prescott*, 855 F. App'x at 954. As in *Prescott*, the Court cannot discern from the record the grievance procedures employed by Collin County Detention Facility during the span of time that Plaintiff was incarcerated there and the events giving rise to his claims occurred. *See id.* at 953. Defendants never introduced the procedures as evidence. Additionally, Defendants put forth no evidence showing that the applicable procedures were explained to Plaintiff or that he was aware of them. *See id.* at 954. Thus, "[w]ithout knowing what the applicable grievance procedures say, it's impossible to determine whether [Plaintiff] exhausted them." *Id.* (quoting *Cantwell*, 788 F.3d at 509). Accordingly, the Court recommends finding Defendants failed to meet their burden to establish there were available administrative procedures Plaintiff failed to exhaust prior to filing suit.

### 2. Physical Injury

Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Thus, absent a physical injury, a plaintiff cannot recover compensatory damages. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) ("Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury."). In the Motion to Dismiss, Defendants argue Plaintiff has

---

[4] If Defendants had submitted the grievance procedures, the motion to dismiss would have been treated as one for summary judgment under Rule 56 because it would have included matters outside of the pleadings. *See Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010) (noting the Fifth Circuit has "frequently approved of using summary judgment to address exhaustion").

failed to state a claim for compensatory damages as he has not asserted any physical injury. (Dkt. #48, p. 6). The Court agrees.

In his Complaint, Plaintiff asserts he is seeking compensatory damages. (Dkt. #1, p. 6). Plaintiff does not, however, allege a physical injury resulting from having to eat his meals in his cell or from any other condition at the Collin County Detention Faciity. Under the PLRA, Plaintiff's failure to allege a physical injury in connection with his constitutional claims justifies dismissal of his compensatory damages claim. *See Higgins v. Navarrete et al.*, 2022 WL 543018, at *3 (5th Cir. Feb. 23, 2022) (affirming district court's grant of summary judgment on the basis that the plaintiff failed to allege a physical injury, as required under the PLRA, for monetary damages claim); *see also Geiger*, 404 F.3d at 374 (affirming the dismissal of a First Amendment claim because the plaintiff alleged only mental anguish, emotional distress, psychological harm, and insomnia as his injuries); *Alexander v. Tippah Cnty.*, 351 F.3d 626, 631 (5th Cir. 2003) (affirming dismissal of the prisoners' conditions-of-confinement claims where they alleged either no or *de minimis* physical injury).

## C. Section 1983 Claims

Even if the PLRA does not bar Plaintiff's compensatory damages claim against Defendants due to Plaintiff's failure to allege a physical injury, the Court agrees with Defendants that Plaintiff's Section 1983 claims do not pass muster under Rule 12(b)(6).

### 1. Individual Capacity Claims—Qualified Immunity

Defendants move for dismissal arguing they are entitled to qualified immunity on Plaintiff's individual capacity claims. (Dkt. #48, pp. 6-8). Defendants specifically assert Plaintiff cannot meet either of the two prongs of qualified immunity analysis.

A person who is "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under the color of law may pursue a Section 1983 cause of action. 42 U.S.C. § 1983; *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 241 (5th Cir. 2021); *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). The doctrine of "qualified immunity," however, protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

State actors sued in their individual capacity under 42 U.S.C. § 1983 are entitled to qualified immunity unless a plaintiff satisfies a two-prong analysis. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id.* The first prong of the qualified immunity test simply requires a plaintiff to show there has been a statutory or constitutional violation. *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011). To satisfy the second prong of the test, a plaintiff must show the defendant's actions were objectively unreasonable in light of law that is "clearly established at the time of the challenged conduct." *Id.*; *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). "Clearly established rights should not be defined broadly." *English v. Davis*, No. 1:20-cv-458, 2022 WL 815025, at *2 (E.D. Tex. Feb. 24, 2022), *Report and Recommendation adopted*, 2022 WL 811061 (E.D. Tex. Mar. 16, 2022) (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). The law is "clearly established" if the plaintiff is "able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (internal quotation omitted); *Wilson v. Layne*, 526 U.S. 603, 617 (1999). Stated differently, "[a]

clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 577 U.S. at 11 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the defense is not valid. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). In the context of a motion to dismiss for failure to state a claim, the plaintiff's burden is discharged if "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Defendants argue the Court should dismiss Plaintiff's claims because Plaintiff's pleadings fail to assert facts, which if true, would overcome the defense of qualified immunity, and thus, Defendants are entitled to the defense. As to the first prong of the qualified immunity analysis, Defendants contend Plaintiff cannot establish a constitutional violation. (Dkt. #48, p. 8).

Pretrial detainees, like Plaintiff, have constitutional rights that flow from the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). "Since the State *does* punish convicted prisoners, but *cannot* punish pretrial detainees, a pretrial detainee's due process rights are said to be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)); *accord Martinez*, 846 F. App'x at 241. "[T]he substantive limits on state action set by the Due Process Clause provide that the state cannot punish a pretrial detainee." *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015). The Fourteenth Amendment entitles pretrial detainees to be free from punishment and to be provided with basic human needs, such as food, water, clothing, medical care, and safe conditions. *See Hare*, 74 F.3d at 639, 650; *Martinez*, 846

F. App'x at 241-42. Such basic needs constitute "humane conditions of confinement" required under the Eighth Amendment, which are applicable to pretrial detainees through the Fourteenth Amendment. *Hare*, 74 F.3d at 649; *Martinez*, 846 F. App'x at 241; *Mitchell v. Denton Cnty.*, No. 4:18-cv-399-ALM-KPJ, 2022 WL 989392, at *9 (E.D. Tex. Feb. 28, 2022), *report and recommendation adopted*, No. 4:18-cv-399-ALM-KPJ, 2022 WL 987819 (E.D. Tex. Mar. 31, 2022). "However, deprivation of a basic need violates the Constitution only when the deprivation is so serious as to amount to a denial of 'the minimal civilized measure of life's necessities.'" *Mitchell*, 2022 WL 989392, at *9 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

In a case challenging conditions of confinement, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019) (quoting *Bell*, 441 U.S. at 535). "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.* (quoting *Bell*, 441 U.S. at 539). The Fifth Circuit has said that a condition may take the form of "a rule," a "restriction," "an identifiable intended condition or practice," or "acts or omissions" by a jail official that are "sufficiently extended or pervasive." *Id.* (quoting *Est. of Henson*, 795 F.3d at 468 (quoting *Duvall v. Dallas County, Tex.*, 631 F.3d 203, 207 (5th Cir. 2011))). Pursuant to *Bell*, "such condition must be 'not reasonably related to a legitimate governmental objective' and must cause the inmate's constitutional deprivation." *Id.* at 632-33 (citation omitted).

Plaintiff's complaint of having to eat meals in his cell in close proximity to the toilet as a result of Defendants implementing and enforcing the CDC's COVID-19 protocols at the Collin County Detention Facility is insufficient to state a violation of the Fourteenth Amendment.

11

Plaintiff does not allege serving him meals in his cell was punitive or was not necessary to respond to COVID-19. *See Bell*, 441 U.S. at 540. Rather, Plaintiff acknowledges the decision for detainees to eat in their cells was made in response to COVID-19, but simply disagrees with the propriety of the mandate. COVID-19 policies, which followed CDC guidelines at the time, were reasonably related to the legitimate government objective of reducing the spread of the virus within the jail staff and population. Specifically, serving detainees meals in their cells was rationally related to—and not excessive when viewed in light of—the purpose of reducing the spread of COVID-19 at the Collin County Detention Facility. *See Drayton v. Wilcher*, No. CV 421-80, 2022 WL 1810719, at *2 (S.D. Ga. June 2, 2022) (the plaintiff complains of official actions which are objectively incidental to a legitimate government objective, i.e., a clear intention to respond to COVID-19). *cf. Bell,* 441 U.S. at 540 ("Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."); *Mestre v. Wagner*, No. CIV.A. 11-2191, 2012 WL 299652, at *4 (E.D. Pa. Feb. 1, 2012) (serving the plaintiff meals in his cell was rationally related to, and not excessive when viewed in light of, managing overcrowding and maintaining jail security). Plaintiff's Complaint fails to allege the eating conditions stemmed from a punitive motive or even any basis from which this Court could infer such a motive.

Plaintiff's allegation that the COVID-19 protocol requiring detainees to eat in their cells "was continued [at the Collin County Detention Facility] well after every restaurant and public place were open to the public" (Dkt. #62, p. 2) does not demonstrate the COVID-19 protocol was unconstitutional. As Defendants aptly noted,

> While COVID restrictions have eased for most, the amount of individuals with
> unknown medical histories coming to the Collin County Detention Facility mean

> that a higher standard of care related the care of detainees must be exercised and is constitutionally mandated. As such, more stringent but reasonable requirements are unsurprising to keep the transmission of COVID at the lowest rates possible for the detainees and staff.

(Dkt. #63, p. 4) (citations omitted). The Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The Court accords such deference here.

Moreover, the COVID-19 protocol implemented and enforced at the Collin County Detention Facility requiring detainees to eat meals in their cells did not result in unconstitutional conditions of confinement in violation of the Fourteenth Amendment. Plaintiff describes the conditions as unsanitary because he had to eat near an exposed toilet and complains double-occupancy cells were not "adequately designed" for two people in which to eat their meals. (Dkt. #1; Dkt. #62, p. 3). Admittedly, there is a point beyond which a prison cell's conditions are so filthy and unsanitary as to render them unconstitutional. *See, e.g.*, *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). However, the type of condition about which Plaintiff complains—an in-cell toilet near the area used for eating— falls well short of that point. *See Kelly v. Gusman*, No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007) (concluding "the types of conditions about which the plaintiff complains, e.g., dirty blankets and an in-cell toilet near areas used for eating and sleeping, fall well short of" conditions so unsanitary they are unconstitutional). Simply because eating in a cell in close proximity to a toilet "is unpleasant or less sanitary than one would wish for his home does not render the conditions unconstitutional." *See id.* Indeed, "the

13

Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998). Plaintiff's Complaint does not demonstrate Plaintiff was deprived of a basic need or, alternatively, that any such deprivation amounted to a denial of the minimal civilized measure of life's necessities. *See Mitchell*, 2022 WL 989392, at *9 (quoting *Wilson*, 501 U.S. at 298).

Therefore, the Court concludes, as other courts have held, that serving a pretrial detainee meals in a cell that has a toilet does not violate the Due Process Clause of the Fourteenth Amendment. *See Detainees of Brooklyn House of Det. for Men v. Malcolm*, 520 F.2d 392, 396 n.3 (2d Cir. 1975) (requiring inmates to eat in cells that contain a toilet does not per se violate the Fourteenth Amendment's Due Process Clause); *Carroll v. George W. Hill Corr. Facility*, No. CV 22-1720, 2022 WL 17539212, at *9 (E.D. Pa. Dec. 8, 2022) ("Requiring inmates to eat in a cell, even one containing a toilet, does not violate the Constitution."); *Borzelleca v. Geo Grp.*, No. 21-CV-3333, 2021 WL 3403515, at *2 n.4 (E.D. Pa. Aug. 3, 2021) (the plaintiff "cannot assert a plausible constitutional claim because he was required to eat in a cell with a toilet"); *Randall v. Cnty. of Berks*, Civ. A. No. 14-5091, 2015 WL 5027542, at *15 (E.D. Pa. Aug. 24, 2015) ("[S]erving a pretrial detainee meals in a cell that can be eaten at his desk, even if the cell has a toilet, does not violate the Due Process Clause of the Fourteenth Amendment."); *Caldwell v. Cabarrus Cnty. Jail*, Civ. A. No. 12-586, 2012 WL 2366451, at *2 (M.D.N.C. June 21, 2012) ("[H]aving to eat in a cell with an unflushed toilet" does not violate the Constitution), *report and recommendation adopted*, 2013 WL 1344452 (M.D.N.C. Apr. 2, 2013); *Mestre*, No. CIV.A. 11-2191, 2012 WL 299652, at *4 (E.D. Pa. Feb. 1, 2012) (serving the plaintiff meals in his cell was rationally related to, and not excessive when viewed in light of, managing overcrowding and maintaining jail security); *Kinser v. Cnty. of San Bernardino*, Civ. A. No. 11-0718, 2011 WL

14

4801899, at *4 (C.D. Cal. Aug. 25, 2011) (citing cases and holding that a pretrial detainee's allegations that she has been confined to her cell more than twenty-two hours a day and had to eat all her meals in her cell near her toilet did not state a Fourteenth Amendment conditions of confinement claim), *report and recommendation adopted*, 2011 WL 4802850 (C.D. Cal. Oct. 11, 2011); *Milton v. Gusman*, No. 10-3309, 2010 W L 5376117, at *2 (E.D. La. Dec. 20, 2010) (citing cases and holding that the inmate's claim that he is "forced to eat in the vicinity of toilets does not, by itself, constitute a constitutional violation"); *Gabriel v. Gusman*, No. CIV.A. 10-1688, 2010 WL 3169840, at *6 (E.D. La. July 16, 2010) ("[T]he fact that inmates must eat in the vicinity of the toilet may be unpleasant but it is not unconstitutional."), *report and recommendation adopted*, No. CIV.A. 10-1688, 2010 WL 3175045 (E.D. La. Aug. 10, 2010); *Kelly*, 2007 WL 2007992, at *3 (holding pretrial detainee's complaint of "dirty blankets and an in-cell toilet near areas used for eating and sleeping [ ] fall well-short" of Fourteenth Amendment violations); *cf. McErlean v. Merline*, No. 07-5681, 2011 W L 540871, at *10 (D.N.J. Feb.8, 2011) (holding that there is no clearly established right for pretrial detainee to be free from sleeping and eating on a floor mattress near the toilet).

Plaintiff also complains inmates were fed on reusable trays instead of disposable trays, which "promote[d] the introduction of the virus due to reusing the trays instead of disposing of them." (Dkt. #62, p. 2). The Court construes Plaintiff's complaints to be arguments that Defendants deliberately disregarded the risk of COVID-19.

"To prevail on a conditions of confinement claim, an inmate must prove that prison officials acted, or failed to act, with deliberate indifference to a substantial risk of serious harm." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018); *Ewing v. Grayson Cnty., Texas*, No. 4:21-cv-00386, 2022 WL 4459929, at *6 (E.D. Tex. Aug. 19, 2022), *report and recommendation*

*adopted*, No. 4:21-cv-386, 2022 WL 4449314 (E.D. Tex. Sept. 23, 2022). "To show a violation, inmates must prove that they were exposed 'to a substantial risk of serious harm' and 'that prison officials acted or failed to act with deliberate indifference to that risk.'" *Valentine v. Collier*, 978 F.3d 154, 162 (5th Cir. 2020) (quoting *Carlucci*, 884 F.3d at 538); *Ewing*, 2022 WL 4459929, at *6. The presence of a substantial risk "is an objective inquiry," while deliberate indifference is subjective and "requires a showing that prison officials had actual knowledge of a risk and disregarded it." *Valentine*, 978 F.3d at 163; *Ewing*, 2022 WL 4459929, at *6.

Plaintiff's Complaint makes clear Collin County Detention Facility officials responded reasonably to risks of harm by attempting to limit detainee's exposure to COVID-19. Simply because the execution of COVID-19 protocols may have been nonoptimal at times, including serving meals on reusable as opposed to disposable trays, the alleged deficiencies fall well short of evidencing deliberate indifference by the named Defendants. Additionally, COVID-19 policies at the Collin County Detention Facility "may have been unsuccessful" from Plaintiff's perspective but "they were not unconstitutional." *Ewing*, 2022 WL 4459929, at *6 (quoting *Valentine*, 978 F.3d at 165 ("The Eighth Amendment does not mandate perfect implementation.")). Furthermore, "[e]ven assuming Defendants' response to COVID-19 was imperfect, or negligent, it is not enough to support a finding of deliberate indifference." *Shomo v. Dep't of Corr. & Cmty. Supervision*, No. 21-cv-00128 (PMH), 2022 WL 1406726, at *12 (S.D.N.Y. May 4, 2022) (citing *Pike v. Cerliano*, No. 6:20-cv-619, 2021 WL 3704377, at *3 (E.D. Tex. Aug. 3, 2021), *report and recommendation adopted*, No. 6:20-CV-619, 2021 WL 3700252 (E.D. Tex. Aug. 19, 2021)).

Moreover, it is well settled that the general fear of contracting COVID-19 or that COVID-19 is spreading is insufficient to state a claim under Section 1983. *Ewing*, 2022 WL 4459929, at *6; *see also Wilson v. Dallas Cnty. Jail*, No. 3:20-cv-02792-C (BT), 2022 WL 1176749, at *2

(N.D. Tex. Mar. 16, 2022) ("Wilson's conditions of confinement claim, rooted only in a generalized fear of catching COVID-19, is meritless."), *report and recommendation adopted*, No. 3:20-cv-2792-C, 2022 WL 1173802 (N.D. Tex. Apr. 20, 2022); *Scott v. Stiefer*, No. 6:20-cv-479, 2021 WL 2008810, at *4 (E.D. Tex. Apr. 15, 2021) ("Plaintiff's subjective fear of contracting Covid-19 is not sufficient to support a claim"), *report and recommendation adopted*, No. 6:20-cv-479-JDK-JDL, 2021 WL 1998796 (E.D. Tex. May 19, 2021); *Hamby v. Warden, Estelle Unit*, No. CV H-20-3428, 2020 WL 7081606, at *2 (S.D. Tex. Dec. 3, 2020) ("[A] prisoner's generalized fear of contracting COVID-19 is not sufficient to state a claim for relief.").

Finally, to the extent Plaintiff is asserting a Fourteenth Amendment equal protection claim based on his allegation that some detainees occasionally ate their meals in the dayroom instead of their cells, the claim is without merit. Plaintiff's allegations do not identify any similarly situated prisoners, nor do his allegations show he was intentionally treated differently from any other prisoners absent a rational basis. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000); *Bonner v. Alford*, 594 F. App'x 266, 267 (5th Cir. 2015).

In sum, Plaintiff fails to plead a constitutional violation sufficient to support a conditions-of-confinement or deliberate indifference claim under the Fourteenth Amendment. Plaintiff also fails to plead a Fourteenth Amendment equal protection claim. As Plaintiff fails to allege facts amounting to a constitutional violation, Defendants are entitled to qualified immunity in the alternative. Based on the foregoing, Plaintiff's claims against Defendants should be dismissed with prejudice.

### 2. Other Grounds Asserted by Sheriff Skinner—No Personal Involvement/No Supervisory Liability

General allegations that Sheriff Skinner is responsible for the Collin County Detention Facility are not enough to establish supervisory liability. *See Hennington v. Lumpkin*, No. 6:20-

cv-593, 2021 WL 5710105, at *6 (E.D. Tex. Nov. 1, 2021) ("Plaintiff also states that Warden Stiefer was legally responsible for the Beto Unit and all the inmates in the prison and failed to protect them from COVID-19. These allegations fail to include facts regarding Warden Stiefer's personal misconduct and they do not include facts demonstrating that Warden Stiefer implemented an unconstitutional policy.") (citation omitted), *report and recommendation adopted*, No. 6:20-cv-593, 2021 WL 5630621 (E.D. Tex. Dec. 1, 2021). To establish liability under § 1983, an individual defendant "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017) (citing *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008)). Defendants urge Sheriff Skinner had no personal involvement in the events that are the basis of Plaintiff's claims and Plaintiff has insufficiently pleaded Sheriff Skinner's personal involvement. Indeed, review of the Complaint reveals no mention of any act or omission committed personally by Sheriff Skinner related to any claim regarding the conditions of the Collin County Detention Facility. *See Toliver v. Braddy*, No. 4:20-CV-00132-ALM-CAN, 2021 WL 1086176, at *5 (E.D. Tex. Feb. 11, 2021) ("Nothing in Plaintiff's complaint even vaguely suggests that the Sheriff participated in the alleged wrongful acts."), *report and recommendation adopted*, No. 4:20-CV-132, 2021 WL 1061386 (E.D. Tex. Mar. 19, 2021); *Diggs v. Waybourn*, No. 4:20-CV-706-P, 2021 WL 961676, at *3 (N.D. Tex. Mar. 15, 2021) (dismissing § 1983 claims against a sheriff and officers for "lack of sufficient personal involvement"). Absent personal involvement or any facts that would give rise to supervisory liability, Plaintiff fails to state a claim upon which relief can be granted. To the extent Plaintiff is suing Sheriff Skinner based on his supervisory role, he cannot be held vicariously responsible for the acts of employees on any theory of vicarious liability or *respondeat superior*. *See Rosas v. Bexar Cnty.*, No. SA-14-

18

CA-1082-DAE, 2015 WL 1966130, at *9 (W.D. Tex. Jan. 31, 2015) ("Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983."), *report and recommendation adopted*, No. 5:14-CV-1082-DAE, 2015 WL 1955406 (W.D. Tex. Apr. 29, 2015). A supervisor may be held liable if he is not personally involved "only if the supervisory official implements a policy 'so deficient that the policy is itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Carter v. Livingston*, No. 9:17-CV-40, 2021 WL 836865, at *8 (E.D. Tex. Jan. 20, 2021) (quoting *Thompkins v. Belt*, 828 F.2d 287, 304 (5th Cir. 1987)), *report and recommendation adopted*, No. 9:17-CV-40, 2021 WL 825490 (E.D. Tex. Mar. 3, 2021). Plaintiff's allegations, though including many of the requisite "buzz words," do not establish that Sheriff Skinner implemented a policy or practice that was itself unconstitutional or was a moving force of any violation of Plaintiff's constitutional rights, as discussed more fully above. *See Pike*, 2021 WL 3704377, at *4 (dismissing § 1983 claim about COVID policies in county jail and noting the plaintiff "does not connect any named Defendant to any action or constitutional violation. [ ] Likewise, he has not identified a specific policy or custom these Defendants have created or implemented that has resulted in a constitutional violation."). On this basis alone, each of Plaintiff's claims against Sheriff Skinner are also subject to dismissal. *See Ewing*, 2022 WL 4459929, at *4.

### 3. Official Capacity Claims

To the extent Plaintiff seeks to recover against Defendants in their official capacities, Plaintiff's claims are subject to dismissal.

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, any Section 1983

claims against Defendants in their official capacities are, in effect, claims against Collin County. *See Bone v. Watt*, No. 4:21-cv-201, 2022 WL 912100, at *7 (E.D. Tex. Feb. 24, 2022) ("Plaintiff's § 1983 action against Sheriff [Skinner] in [his] official capacity is, in effect, a claim against [Collin] County.") (citations omitted) (alterations in original), *report and recommendation adopted*, No. 4:21-cv-201, 2022 WL 906191 (E.D. Tex. Mar. 27, 2022). A judgment against a public servant in his or her official capacity imposes liability on the entity that he or she represents, *see Marceaux v. Lafayette City-Par. Consol. Gov't*, 921 F. Supp. 2d 605, 623 (W.D. La. 2013); thus, a plaintiff's suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell*, 436 U.S. at 690 n.55; *see also Gage v. Valdez*, No. 3:16-cv-1360-B-BH, 2017 WL 4465765, at *3 (N.D. Tex. Aug. 21, 2017) ("Plaintiff's suit against the Sheriff in her official capacity is merely another way of pleading an action against her municipal employer, i.e., Dallas County."), *report and recommendation adopted*, No. 3:16-cv-1360-B-BH, 2017 WL 4419041 (N.D. Tex. Oct. 4, 2017); *Sutherland v. Akin*, No. 4:19-cv-216-O, 2021 WL 462103, at *8 (N.D. Tex. Feb. 9, 2021) ("Sutherland's claims against the defendants [including a sheriff and county jail officers, among others,] in their official capacities as employees of the Wise or Tarrant County Jails are construed as claims against Wise County and Tarrant County.").

Under *Monell*, "municipalities may be sued under § 1983 but cannot be held liable for acts of their employees under a theory of *respondeat superior*." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021). Rather, to state a claim against a municipality under *Monell* and its progeny, a plaintiff must plead that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Id.* (quoting *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017)); *see also Doe v. Harris Cnty.*, No. 21-20251,

2022 WL 220114, at *5 (5th Cir. Jan. 24, 2022) (per curiam) (applying the rule to claims asserted against a county entity). A policy constitutes the "moving force" behind an alleged violation if there is "'a direct causal link' between the policy and the violation." *Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 225 (5th Cir. 2020) (per curiam) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). Additionally, "[t]he official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James*, 577 F.3d at 617 (quoting *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

Importantly, in the absence of any underlying constitutional violation, there can be no municipal liability under *Monell*. *See Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (holding that because there was no constitutional violation, there can be no *Monell* claims); *Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (holding that because the plaintiff failed to demonstrate an underlying constitutional violation, the claims against the county and the officers in their official capacities failed); *Harris v. Serpas*, 745 F.3d 767, 774 (5th Cir. 2014) (upholding the district court's dismissal of the *Monell* claims because the plaintiffs had not shown there was a constitutional violation).

Review of the Complaint shows Plaintiff fails to plead sufficient allegations to state a plausible claim for relief of a violation of a constitutional right whose moving force was the policy or custom. As discussed above, Plaintiff's allegation that he had to eat meals in his cell pursuant to COVID-19 protocol at the Collin County Detention Facility does not allege a municipal custom or policy to violate the rights of pretrial detainees. *See Witherspoon v. Waybourn*, No. 4:20-CV-313-O, 2021 WL 1056514, at *8 (N.D. Tex. Mar. 19, 2021) ("Plaintiff's allegation that he was

housed with inmates who may have been exposed to COVID-19 does not allege a municipal custom or policy to violate the rights of pretrial detainees."), *aff'd*, No. 21-10407, 2022 WL 2188530 (5th Cir. June 17, 2022). To the contrary, the COVID-19 protocols implemented and enforced at the Collin County Detention Facility were aimed at reducing the transmission of COVID-19. Moreover, as discussed more fully above, the COVID-19 protocols implemented and enforced at the Collin County Detention Facility did not result in unconstitutional conditions of confinement in violation of the Fourteenth Amendment. Thus, any official capacity claims should be dismissed.

### D.  Violations of Texas Commission on Jail Standards

To the extent Plaintiff alleges a claim based on purported violations of the Texas Commission on Jail Standards, this claim fails. "It is well established that violations of state law are not actionable under § 1983," and the protocols mandated by Texas law and adopted by the Texas Commission on Jail Standards "do not establish constitutional rights to treatment for detainees, nor do they so purport." *Whitt v. Stephens Cnty.*, 236 F. App'x 900, 902-3 (5th Cir. 2007); *see also San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 n.4 (5th Cir. 1991) ("Violation of a state statute is not actionable under § 1983.").

### E.  International Treaty Claims

Plaintiff's claims under the Geneva Convention and the International Covenant on Civil and Political Rights fail to state a claim upon which relief can be granted. Plaintiff has not cited, nor has the Court found, any authority to support the recognition of a private cause of action for the violations Plaintiff alleges. *See Allmond v. Alexandria Sheriff's Dep't*, No. CIV.A. 02-309-A, 2002 WL 32514956, at *4 (E.D. Va. June 4, 2002), *aff'd sub nom. Allmond v. Alexandria Sherriff's Dep't*, 48 F. App'x 74 (4th Cir. 2002); *see also Nattah v. Bush*, 770 F.Supp.2d 193, 204 (D.D.C.

2011) (the Geneva Convention "does not create a private right of action for private individuals to enforce its terms"); *Ford v. Artiga*, No. CIV. S-12-2370 KJM, 2013 WL 6623868, at *7 (E.D. Cal. Dec. 13, 2013) (same), *aff'd*, 657 F. App'x 710 (9th Cir. 2016); *In re Iraq & Afghanistan Detainees Litig.*, 479 F. Supp. 2d 85, 117 (D.D.C. 2007) ("Because Geneva Convention IV manifests an intent to be enforced through legislation or diplomacy, it is not a self-executing treaty that provides a private right for the plaintiffs to sue the defendants for money damages."), *aff'd Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011). Accordingly, Plaintiff's claims based on the named international treaties must fail.

## F.  Punitive damages

Although claims for compensatory damages may be barred in the absence of physical injury, the Fifth Circuit has recognized that a prisoner may recover nominal or punitive damages, despite a lack of physical injury, if he can successfully prove a constitutional violation under 42 U.S.C. § 1983 and overcome a defense of qualified immunity. *Hutchins v. McDaniels*, 512 F.3d 193, 197-98 (5th Cir. 2007); *Anderson v. Black*, No. 6:17-cv-672, 2018 WL 3453485, at *5 (E.D. Tex. June 26, 2018), *report and recommendation adopted sub nom. Anderson v. Black*, No. 6:17-cv-672, 2018 WL 3438791 (E.D. Tex. July 16, 2018). Because Plaintiff fails to plead a constitutional violation and overcome the defense of qualified immunity, Plaintiff's claim for punitive damages should be dismissed.

## G.  Leave to Amend

Generally, a *pro se* plaintiff should be allowed to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district

court to manage a case." *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). A district court may consider the following factors in deciding whether to grant leave to amend: undue delay, bad faith or dilatory motive on the plaintiff's part, repeated failures to cure deficiencies by previous amendments allowed, undue prejudice to the opposing party, and futility of the amendment. *Id.* "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Brewster*, 587 F.3d at 768 (citation omitted). The Court also can deny leave to amend where such an amendment would be futile. *See, e.g.*, *Isom v. U.S. Dep't of Homeland Sec.*, No. 4:20-cv-948, 2021 WL 2232052, *3 (E.D. Tex. Apr. 28, 2021), *report and recommendation adopted*, 2021 WL 2224345 (E.D. Tex. June 2, 2021) (collecting cases). Furthermore, "'[w]hether leave to amend should be granted is entrusted to the sound discretion of the district court.'" *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).

Here, Plaintiff has pleaded his best case; hence, under the circumstances, it would be inappropriate to grant Plaintiff leave to amend. Furthermore, Plaintiff has provided no indication in his response to the Motion to Dismiss that he would be able to cure the pleading deficiencies identified herein if he were allowed to amend his Complaint. Under these circumstances, the Court finds granting Plaintiff leave to amend would be futile, would unnecessarily delay these proceedings, and would prejudice Defendants, who have already filed a motion to dismiss and would likely file a second motion to dismiss if an amended complaint were filed.

## H.  Strike under 28 U.S.C. § 1915(g)

Under the PLRA, an inmate may not file any lawsuits or appeals *in forma pauperis* if he has three or more lawsuits or appeals previously dismissed as "frivolous, malicious, or fails to state

a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The statutory provision was designed to stop abusive litigious practices employed by inmates.

Because the Court is recommending dismissal of Plaintiff's claims in this case for failure to state a claim upon which relief may be granted, it is further recommended that Plaintiff be advised that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915, and that should he accumulate three strikes, he may be denied *in forma pauperis* status and be required to pay the full filing fee when filing additional civil actions or appeals unless he demonstrates that he is in imminent danger of serious physical injury.

## IV. RECOMMENDATION

For the reasons set forth above, the Court recommends Defendants' Motion to Dismiss (Dkt. #48) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE**. The Court further recommends this dismissal be counted as a strike pursuant to 28 U.S.C. § 1915.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir.

1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

        **So ORDERED and SIGNED this 3rd day of August, 2023.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE